# EXHIBIT C

FILED

02 NOV 14 AM 10: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

PREDICATE LOGIC, INC.,

                                    Plaintiff,

vs.

DISTRIBUTIVE SOFTWARE, INC.,

                                    Defendant.

CASE NO. 01cv1951 BTM(CGA)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO STAY PROCEEDINGS**

Defendant Distributive Software, Inc., has filed a motion for stay of proceedings. For the reasons discussed below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff Predicate Logic, Inc. filed this patent infringement action on October 23, 2001. Plaintiff claims that Defendant is infringing one or more claims of United States Patent No. 5,930,798 ("'798 Patent"), an invention entitled "Universal Data Measurement, Analysis and Control System," by making, using, importing, offering for sale, and/or selling software products including "Software Suite."

At the request of Plaintiff, default was entered against Defendant on January

126

01CV1951

1  7, 2002. On January 17, 2002, Defendant filed a motion to set aside the default. The

2  next few months were spent litigating the issue of the propriety of the default. On May

3  7, 2002, the Court issued its order granting Defendant's motion to set aside default.

4      The Court held a status conference on August 29, 2002, at which time the

5  Markman hearing was set for January 6, 2003. An order filed on September 5, 2002,

6  set forth the various dates for the exchange of claims construction papers.

7      On October 8, 2002, Defendant filed its motion for stay of proceedings.

8  Defendant's motion is based on its Request for Reexamination of the '798 Patent

9  which was filed with the U.S. Patent and Trademark Office ("PTO") on October 7,

10  2002. The Request for Reexamination challenges all 20 claims of the '798 Patent

11  based on the textbook Building Effective Decision Support Systems by Sprague &

12  Carlson ("DSS Reference"), a reference that allegedly was not considered previously

13  by the PTO.

14                                   II. ANALYSIS

15

16      Courts have inherent power to stay an action pending conclusion of PTO

17  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir.

18  1988). The decision whether to grant or deny a motion to stay proceedings pending

19  PTO reexamination proceedings rests within the sound discretion of the court. GPAC,

20  Inc. v. DWW Enterprises, Inc., 144 F.R.D. 60, 66 (D.N.J. 1992). There is a "liberal

21  policy" in favor of granting motions to stay proceedings pending the outcome of PTO

22  reexamination or reissuance proceedings. ASCII Corp. v. STD Entertainment USA,

23  Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

24      In determining whether to stay litigation pending reexamination by the PTO,

25  courts generally consider the following factors: (1) the stage of litigation, i.e., whether

26  discovery is almost complete and whether a trial date has been set; (2) whether a stay

27  would cause undue prejudice or present a clear disadvantage to the non-moving

28  party; and (3) whether a stay will simplify the issues in question and trial of the case.

1  Id. at 63-64. See also Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y.
2  1999).

3        This litigation has not proceeded so far that it would be unjust to stay the action.
4  Although this action was filed about a year ago, the first six months were spent
5  litigating the issue of default. Some discovery has been exchanged but discovery is
6  not nearing completion. Trial has not been set. Compare Xerox Corp. v. 3Com Corp.,
7  69 F. Supp. 2d 404 (W.D.N.Y. 1999) (denying motion for stay where the case was
8  pending for almost two years and extensive discovery was conducted); Agar Corp. v.
9  Multi-Fluid, Inc., 983 F. Supp. 1126 (S.D. Tex. 1997) (denying motion for stay where
10  the case was pending for one year and nine months, discovery was well under way
11  and trial was set); Wayne Automation Corp. v. R.A. Pearson Co., 782 F. Supp. 516
12  (E.D. Wash. 1991) (denying motion for stay where the trial date was set and
13  defendant conducted extensive discovery).

14        Plaintiff claims Defendant delayed filing its Request for Reexamination to gain
15  a tactical advantage over it. Plaintiff further claims that the motion for a stay is a delay
16  tactic in keeping with Defendant's alleged discovery misconduct. Counsel for Plaintiff
17  claims that on July 8, 2002 counsel for Defendant stated that Defendant would be
18  filing a reexamination application. (Declaration of Andrew D. Skale in support of
19  Opposition, ¶ 8.) According to Plaintiff, Defendant purposefully delayed filing its
20  Reexamination Request until October in order to obtain information regarding
21  Plaintiff's infringement position while refusing to produce information regarding its
22  invalidity claims.

23        As ordered by the Court, Plaintiff supplied Defendant with an infringement
24  statement on September 27, 2002, and the parties exchanged statements of patent
25  construction on October 31, 2002. However, Plaintiff claims that Defendant has
26  refused to produce documents and responses to interrogatories regarding
27  Defendant's invalidity claims. A motion to compel is pending before Magistrate Judge
28  Aaron.

01CV1951

1    Defendant denies Plaintiff's contention that Defendant intentionally delayed the
2  filing of the Request for Reexamination.  Defendant claims that although filing for
3  reexamination was one of the options being considered in early July, it did not decide
4  to file for reexamination until August 27, 2002.  (Declaration of John W. Dozier in
5  support of Reply, ¶ 3.)  Defendant informed the Court that it would file for
6  reexamination at the status conference on August 29, 2002.  Defendant also argues
7  that it has withheld production of certain documents and interrogatory responses
8  because they would reveal confidential and proprietary information.  Defendant and
9  Plaintiff have been wrangling over the content of a proposed protective order since
10  July 16, 2002.   Defendant filed a motion for protective order on October 17, 2002,
11  which is currently pending before the Magistrate Judge.

12    For the most part, the papers submitted by Plaintiff and Defendant consist of
13  bickering over who is at fault for the failure to agree on a proposed protective order.
14  As far as the Court is concerned, there is some gamesmanship on both sides and the
15  Court need not enter the fray to decide the instant motion.

16    Based on the facts before it, the Court finds that there is insufficient evidence
17  to conclude that Defendant purposefully delayed filing its Request for Reexamination
18  or that the motion for stay is a delay tactic.  To avoid any prejudice to Plaintiff in
19  connection with the discovery of Defendant's invalidity position, the Court will not stay
20  the *pending* discovery pertaining to Defendant's invalidity claims.  The stay does not
21  apply to the pending motion for protective order or the pending motion to compel as
22  it pertains to Defendant's invalidity claims.

23    Plaintiff also claims that it will suffer prejudice as the result of a stay because
24  it is a small company which will be irreparably harmed by Defendant's alleged
25  continual infringement during the reexamination process. Unfortunately, reexamination
26  can be a drawn out process, resulting in a significant delay in court proceedings.
27  Protracted delay is always a risk inherent in granting a stay, yet courts continue to
28  stay actions pending reexamination.  The general prejudice of having to wait for

4

01CV1951

1  resolution is not a persuasive reason to deny the motion for stay. Moreover,

2  Defendant counters that it would suffer prejudice if the stay is denied because it is a

3  small company which cannot afford to litigate claims that ultimately may be changed

4  or invalidated.

5       Finally, the Court finds that the stay will result in the simplification of issues in

6  this case. As explained by the Federal Circuit, "One purpose of the reexamination

7  procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is

8  canceled) or to facilitate trial of that issue by providing the district court with the expert

9  view of the PTO (when a claim survives the reexamination proceeding)." Gould v.

10 Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983), cert. denied, 464 U.S. 935

11 (1983). The Court believes that it will benefit from the PTO's evaluation of how the

12 DSS Reference impacts the claims of the patent-in-suit.

13      Plaintiff argues that even if the patent-in-suit emerges from reexamination

14 amended, "most of the claim elements would emerge unchanged — likely only a few

15 additional terms would be added." (Memorandum of Points and Authorities in support

16 of Opposition, 15:20-22.) This is mere speculation on Plaintiff's part. It is equally

17 possible that a number of the claims will be significantly modified or canceled or that

18 the patent itself will be invalidated. Accordingly, the Court finds that a stay would be

19 appropriate to avoid the risk of unnecessary litigation and to permit the clarification of

20 issues before this Court.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

5

01CV1951

## III. CONCLUSION

For the reasons discussed above, Defendant's motion for stay of proceedings [85-1] is **GRANTED IN PART** and **DENIED IN PART**. With the exception of pending discovery pertaining to Defendant's invalidity claims, the Court hereby stays this action pending reexamination proceedings before the PTO. The stay does not apply to the pending motion for protective order or the pending motion to compel as it pertains to Defendant's invalidity claims. Defendant shall produce all discovery ordered by the Magistrate Judge that is subject to the pending motion. Defendant shall notify the Court when the PTO rejects or accepts Defendant's Request for Reexamination. Any dilatory practices by Defendant in connection with the reexamination proceedings will be grounds for vacating the stay. A status conference shall be held on May 13, 2002 at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: _November 13, 2002_                    _Barry Ted Moskowitz_
                                              **HONORABLE BARRY TED MOSKOWITZ**
                                              United States District Judge

cc:    Magistrate Judge Aaron
       All parties and counsel of record

01CV1951

# EXHIBIT D

LEXSEE 2006 US DIST LEXIS 37743

**PHOTOFLEX PRODUCTS, INC., Plaintiff, v. CIRCA 3 LLC dba AMVONA.COM, Defendant.**

**No. C 04-03715 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 37743*

**May 24, 2006, Decided**
**May 24, 2006, Filed**

**COUNSEL:** [*1] Photoflex Products, Inc., Plaintiff: Alfredo A. Bismonte, Bobby T. Shih, Daniel S. Mount, Mount & Stoelker, San Jose, CA; Michael J. Hughes, Intellectual Property Law Offices, Campbell, Ca.

Circa 3 LLC, also known as, Amvona.com, Defendant: Warren J. Krauss, Detert Moran & Arnold, San Francisco, CA; James Yuanxin Li, Sedgwick Detert Moran & Arnold, San Francisco, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION TO STAY LITIGATION**

Now before the Court is Defendant Circa 3 LLC dba Amvona.com's ("Amvona") motion to stay litigation during the pendency of reexamination of United States Patent 6,076,935 (the "'935 Patent"). The Court finds that this matter is appropriate for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 26, 2006 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's motion to stay litigation. In this action, Plaintiff brings claims for copyright and patent infringement, as well we claims of unfair competition and [*2] false designation of origin, related to the manufacture and marketing of high quality photographic equipment. Count two of the second amended complaint for patent infringement is STAYED, but

Counts one, three and four for copyright infringement, false designation of origin and unfair competition are NOT STAYED.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of *section 301*." *35 U.S.C. § 302*. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request. . . ." *35 U.S.C. § 303(a)*. The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305*.

The determination of whether to grant a stay pending the [*3] outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983))*. When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal.*

2006 U.S. Dist. LEXIS 37743, *

*Aug. 7, 2000).* There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).*

### B. Early Stage of Litigation Favors a Stay of the Patent Claim.

Here, the early [*4] stage of this litigation weighs in favor of granting a stay of the patent infringement portion of the case. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F. Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Amvona has served 14 interrogatories and 29 requests for production of documents and Photoflex has served 16 interrogatories and 5 requests for production of documents. No depositions have been taken or scheduled. (*See* Declaration of James Yuanxin Li ("Li Decl."), P 2.) Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023.*

### C. A Stay Will Not Unduly Prejudice Plaintiff.

[*5] In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).*

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). There has been no showing of dilatory motive or tactics.

Accordingly, te Court finds that a stay of the patent claim [*6] will not unduly prejudice Plaintiff, and thus this factor also weighs in favor of granting a stay.

### D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

Because the patent-in-suit is currently being reexamined, the Court finds that the patent infringement case should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

However, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005).* If such matters "would continue to be an issue . . . a stay would not preserve many resources." *Id.*

Here, in addition to the patent infringement claim, Plaintiff brings claims for copyright infringement, false designation of origin [*7] and unfair competition. Simply arguing these claims have no merit, Defendant has failed to address whether there are significant overlapping issues between the patent claim and these other claims whereby a stay of the other claims would reduce the burden of litigation on both the parties and the Court. Thus, the Court finds that Defendant has made no showing upon which the Court could find a stay of those separate causes of action would be justified.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Amvona's motion to stay the patent infringement portion of this case but DENIES the motion as to the remaining claims.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Amvona's motion to stay. Count two for patent infringement is stayed from the date of this Order until further notice with the exception of activities relating to or arising out of the judicial settlement conference currently schedule before Magistrate Judge Wayne D. Brazil on May 25, 2006. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination [*8] proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the '935 Patent, until the stay of the patent infringement claim is lifted.

The Court DENIES the request for a stay as to counts one, three and four.

2006 U.S. Dist. LEXIS 37743, *

**IT IS SO ORDERED.**

Dated: May 24, 2006

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

# EXHIBIT E

LEXSEE 2007 U.S. DIST. LEXIS 66712

JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVEL-
OPMENT TRUST, Plaintiff, vs. THE BLACK AND DECKER CORPORATION, et
al., Defendants.

CASE NO. 06cv1572 BTM (CAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA

*2007 U.S. Dist. LEXIS 66712*

September 10, 2007, Decided
September 10, 2007, Filed

**PRIOR HISTORY:** *Sorensen v. Black & Decker Corp.,*
*2007 U.S. Dist. LEXIS 62982 (S.D. Cal., Aug. 27, 2007)*

**COUNSEL:** [*1] For Jens Erik Sorensen, as Trustee of
Sorensen Research and Development Trust, Plaintiff:
James Michael Kaler, LEAD ATTORNEY, Law Offices
of James M Kaler, San Diego, CA; Melody A Kramer,
LEAD ATTORNEY, Kramer Law Office, San Diego,
CA; Patricia A Shackelford, LEAD ATTORNEY, Zel-
kind and Shackelford, San Diego, CA.

For The Black & Decker Corporation, a Maryland corpo-
ration, Defendant: Dina M Hayes, Gregory P Casimer,
Raymond P Niro, Jr, LEAD ATTORNEYS, Niro Sca-
vone Haller and Niro, Chicago, IL; John Christopher
Jaczko, LEAD ATTORNEY, Allison H Goddard, Jaczko
Goddard, San Diego, CA; Kenneth S Klein, Foley and
Lardner LLP, San Diego, CA.

For B&D HOLDINGS, LLC, Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller &
Niro, Chicago, IL; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For BLACK & DECKER, INC., Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller &
Niro, Chicago, IL; Allison H Goddard, Jaczko Goddard,
San Diego, CA; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For HI-TECH PLASTICS INC., Phillips Plastics Corpo-
ration, Defendants: Kenneth S Klein, LEAD ATTOR-
NEY, Foley and Lardner LLP, San Diego, CA; Robert L
Binder, LEAD ATTORNEY, Foley [*2] & Lardner
LLP, Milwaukee, WI.

For PORTER-CABLE CORPORATION, VECTOR
PRODUCTS, INC., Defendants: Raymond P Niro, Jr,
LEAD ATTORNEY, Niro Scavone Haller and Niro,
Chicago, IL.

For Black & Decker (U.S.) Inc, Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller and
Niro, Chicago, IL; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For HI-TECH PLASTICS INC., Counter Defendant:
Kenneth S Klein, LEAD ATTORNEY, Foley and Lard-
ner LLP, San Diego, CA; Robert L Binder, LEAD AT-
TORNEY, Foley & Lardner LLP, Milwaukee, WI.

For Jens Erik Sorensen, as Trustee of Sorensen Research
and Development Trust, Counter Defendant: James Mi-
chael Kaler, LEAD ATTORNEY, Law Offices of James
M Kaler, San Diego, CA.

For Phillips Plastics Corporation, Counter Claimant:
Kenneth S Klein, LEAD ATTORNEY, Foley and Lard-
ner LLP, San Diego, CA; Robert L Binder, LEAD AT-
TORNEY, Foley & Lardner LLP, Milwaukee, WI.

**JUDGES:** Honorable Barry Ted Moskowitz, United
States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

**ORDER:**

    (1) DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION OF DENIAL OF OBJEC-

Case 3:08-cv-00309-BTM-CAB    Document 10-3    Filed 04/01/2008    Page 14 of 46

Page 2
2007 U.S. Dist. LEXIS 66712, *

TIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. # 163];

(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20, 2007 [*3] ORDER RE BIFURCATION [Doc. # 171];

(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. # 178];

and

(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. # 204]

**I. Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order**

On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with *28 U.S.C. § 636(b)(1)(A)* and *Fed. R. Civ. P. 72(a)*, Plaintiff filed an objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The Court found that the Magistrate Judge's determinations regarding the Black & Decker Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule 2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court. However, the Court was unable to determine at that time whether, and to what extent, the Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to provide the requisite [*4] showing of prejudice in support of any laches and/or equitable estoppel defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis Dearing in regard to this case." To the extent Plaintiff believed that B&D's response to the interrogatory indicated that this Court's determination regarding waiver of the attorney-client privilege was in error, it was invited to move for reconsideration of the decision at that time.

On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice identified included the inability to have Mr. Dearing testify regarding his communications in the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184 Patent. These communications included discussions directly with Mr. Sorensen and his representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B&D also indicated that it was prejudiced because it could not present [*5] Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B&D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B&D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

[Doc. # 177 at P 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that opportunity [*6] and filed a motion for reconsideration on September 4, 2007 [Doc. # 240]. B&D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending motion for reconsideration. Accordingly, Plaintiff's motion is DENIED without prejudice as moot.

**II. Motion for Reconsideration of Bifurcation**

On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment of laches. The Court denied B&D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and estoppel. At B&D's urging, the Court and the parties

2007 U.S. Dist. LEXIS 66712, *

agreed to schedule this bench trial beginning on December 17, 2007. [*7] In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. # 147 at 2-3.] Citing the Ninth Circuit case of *Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001)*, the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B&D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. # 171.] B&D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights [*8] to a jury determination on willfulness, B&D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B&D's motion for reconsideration arguing that there is no authority establishing any right to a jury trial on willfulness and, to the extent such a right exists, B&D has waived its rights by continually requesting that the Court schedule a short bench trial on laches before proceeding with the rest of the action.

The Court finds that the right to a jury trial on willfulness exists in a patent action that will be tried to a jury. See, e.g., *Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1250 (Fed. Cir. 1989)*. Having considered the submissions of the parties and the record of these proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by this Court in an effort to accommodate B&D's request for an early determination of laches, which it argued, if found, would greatly expedite the conclusion of this matter. Having recognized that a laches determination requires that this Court determine, before any jury has considered the [*9] question, whether Defendants willfully infringed Plaintiff's patent, B&D has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial despite B&D's express wishes.

The Court's recognition of the practical ramifications of the intertwinement of willfulness in any laches determination was the impetus for the Court's invitation to

reconsider in its June 20, 2007 order. Having considered B&D's submission, which was based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS** B&D's motion. The bifurcated bench trial on equitable defenses previously scheduled for December 17, 2007 is hereby VACATED, along with all pretrial proceedings associated with it, including the November 26, 2007 pretrial conference.

## III. Motion to Stay Litigation Pending Reexamination

On August 3, 2007, all Defendants jointly filed a motion for a stay of these proceedings. Defendants' motion is based on B&D's pending request for reexamination of Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on July 30, 2007. The request for reexamination challenges, *inter alia*, all 5 claims of the '184 Patent that are asserted in the [*10] present litigation. The challenge is based on a number of prior art references, almost all of which were apparently not considered by the PTO in the prosecution of the '184 Patent.

Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988)*. The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. See, e.g., *Photoflex Prods. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal. May 24, 2006)*. There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. *ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)*.

In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the [*11] issues in question and trial of the case. See, e.g., *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)*.

The Court finds that this litigation has not proceeded so far that it would be unjust to stay the action. Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion -- it is not. [1] For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [See Doc. # 159 at 2.] No deadline for the completion of fact discovery has even been set. Moreover, the parties are just beginning to brief the prelimi-

nary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's [*12] corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. See, e.g., *Broad. Innovation, L.L.C. v. Charter Communs., Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away). :

>    1   In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. # 201] is GRANTED.

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it. He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the '184 Patent would expire during the reexamination process, thereby precluding Plaintiff from offering any amendments to the claims. Defendants [*13] respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007), which was only issued at the end of April. The Court is not convinced that Defendants employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in *Broadcast*, the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in *Broadcast*, the answer here is that clearly Plaintiff does have an ade-

quate remedy. Defendants point out, and Plaintiff has [*14] not disputed, that the '184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.)

In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. In re Trans Texas Holdings Corp., 2006-1599 and [*15] 2006-1600, 498 F.3d 1290, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug. 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility accordingly:

>    Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to [Defendant]: if this Court finds that the [patent] is not invalid and that [Defendant] has infringed it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement, then [Defendant] would have no ability to recover those damages if at a later date the PTO determined that the [] patent is invalid.

*Bausch & Lomb, Inc. v. Alcon Lab., Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court finds such a possibility to be, at a minimum, a highly undesirable outcome.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] [*16] (when the claim is canceled) or to facili-

2007 U.S. Dist. LEXIS 66712, *

tate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)*, cert. denied, *464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983)*. The Broadcast court, elaborating on this point, explained:

> Shifting the patent validity issue to the PTO has many advantages, including:
>
> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*2006 U.S. Dist. LEXIS 46623, at \*9-10* (quoting *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).*

The [*17] Court believes that it will benefit from the PTO's evaluation of how the previously unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.

The Court finds that, especially in this case, the reexamination process has the potential to significantly narrow the issues for trial because of the impending expiration of the `184 Patent. While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the proper conclusion. It is enough to note that when reex-

amination is requested by a third party, as in this case, all claims are confirmed only 29% of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.) Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process. [*18] [2]

> 2 Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant reexamination (a decision which should issue no later than October 30, 2007), this Court would immediately lift the stay and these proceedings would continue -- a relatively insignificant 2-month delay being all that would result.

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility of prejudice from entering a stay:

> If the PTO does not invalidate or otherwise alter the claims of the [] patent, the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, [*19] the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. See, e.g., *Hamilton, 355 F. Supp. 2d 991, 2005 U.S. Dist. LEXIS 2005, 2005 WL 3465664 at \*1* ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.") (quoting *Pegasus Dev. Corp. v. Directv, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at \*2).*

*2006 U.S. Dist. LEXIS 46623, at \*32-33.* Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

2007 U.S. Dist. LEXIS 66712, *

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART.** With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent. The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. # 182], which is calendared for hearing on October 12, 2007. As was discussed above in Section I, the Court will also continue to hear B&D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 [*20] order regarding production of Dennis Dearing's attorney work product [Doc. # 240], which is calendared for hearing on November 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007. All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision. If the PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates. If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings. During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising

the Court of any change in the status of those proceedings.

### IV. Motion for Partial Summary Judgment

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, [*21] holding them to be a single enterprise for purposes of patent infringement liability. [Doc. # 204.] The motion is presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's motion to be premature. Accordingly, the Court hereby DENIES Plaintiff's motion without prejudice. [3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

3 Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. # 204-5] is also **DENIED** as moot.

**IT IS SO ORDERED.**

DATED: September 10, 2007

Honorable Barry Ted Moskowitz

United States District Judge

# EXHIBIT F

LEXSEE 2007 U.S. DIST. LEXIS 18785

**NANOMETRICS, INC., Plaintiffs, v. NOVA MEASURING INSTRUMENTS, LTD., et al., Defendants.**

.No. C 06-2252 SBA

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

*2007 U.S. Dist. LEXIS 18785*

**February 26, 2007, Decided**
**February 26, 2007, Filed**

**COUNSEL:** [*1] For Nanometrics Incorporated a Delaware Corporation, Plaintiff: Alfredo A. Bismonte, Justin T. Beck, Ronald Craig Finley, LEAD ATTORNEYS, Jeremy Michael Duggan, Beck, Ross, Bismonte & Finley, LLP, San Jose, CA.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Defendants: David Schnapf, LEAD ATTORNEY, Nathaniel Philip Bruno, Neil A. Smith, Sheppard, Mullin, Richter & Hampton LLP, San Francisco, Ca.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Counter-claimants: David Schnapf, LEAD ATTORNEY, Nathaniel Philip Bruno, Neil A. Smith, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA.

For Nanometrics Incorporated a Delaware Corporation, Counter-defendant: Alfredo A. Bismonte, Justin T. Beck, Ronald Craig Finley, LEAD ATTORNEYS, Jeremy Michael Duggan, Beck, Ross, Bismonte & Finley, LLP, San Jose, CA.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Counter-claimants: Nathaniel Philip Bruno, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA.

**JUDGES:** Saundra Brown Armstrong, United States District Judge.

**OPINION BY:** Saundra Brown Armstrong

**OPINION**

**ORDER**

[Docket No. 32]

Before the Court is defendants [*2] Nova Measuring Instruments, Ltd. and Nova Measuring Instruments, Inc.'s (collectively "Nova") Motion to Stay Proceedings Pending the Re-examination of the Patent-in-Suit [Docket No. 32]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. For the reasons that follow, the Court GRANTS Nova's motion.

**BACKGROUND**

On March 29, 2006, plaintiff Nanometrics, Inc. filed a complaint alleging that Nova is infringing on *Patent No. 34,783* ('783). The parties are competitors in the business of inventing, designing, manufacturing, and marketing systems that monitor, measure, and control processes for the semiconductor manufacturing industry. On May 22, 2006, Nova counterclaimed.

The *'783 patent* is the only patent in dispute. The *'783 patent* issued in 1991 and expires on February 1, 2010. On December 7, 2006, the United States Patent and Trademark Office (PTO) granted Nova's request for re-examination of the *'783 patent*. In light of the PTO granting a re-examination of the *'783 patent*, Nova requests the Court stay all proceedings.

**LEGAL STANDARDS**

Re-examination is a procedure by which any [*3] person can request that the PTO re-examine or re-evaluate the patentability of an unexpired United States patent. *See 35 U.S.C. § 302; see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *1 (D. Colo. 2006).* "Congress instituted the reexamination process to shift

2007 U.S. Dist. LEXIS 18785, *

the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektronedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002)* (citations omitted).

Courts are not required to stay judicial proceedings pending re-examination of a patent. It is, however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (citations omitted) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination"); *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985); [*4] Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006).* There is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); see also Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q. 2d 1786, 1788 (E.D. Ark. 1991)* ("[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac, 450 F. Supp. 2d at 1110; KLA-Tencor Corp. v. Nanometrics, Inc., 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *2 (N.D. Cal. 2006); [*5] IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).* A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).*

## ANALYSIS

Nova contends that the re-examination process will either make this litigation moot, or it will significantly narrow the issues for resolution. Nanometrics counters that "[a] stay is not warranted because it would merely delay the day of reckoning." Docket No. 38, at 2. Moreover, Nanometrics asserts that Nova has in the past made multiple re-examination requests of patents held by Nanometrics which have largely been unsuccessful.

### 1. Stage of Litigation

Nova's request for stay comes approximately nine months after the patent infringement claim was brought against it. This litigation is, however, still in the early stages. The parties exchanged initial disclosures on November 30, 2006, and a case management conference was held on December 6, 2006. Discovery has commenced, but it has not proceeded beyond [*6] this point. No briefing on claim construction has been filed. No dispositive motions have been submitted. And as currently scheduled, trial will not commence until April 28, 2008, at the earliest. This being the early stage of litigation weighs in favor of granting a stay. *See, e.g., KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *2* (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay); *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)* (granting stay where the parties had undertaken little or no discovery).

### 2. Simplification of the Issues for Trial

There is little doubt that should the PTO find the '783 patent invalid, this action will be rendered moot. *See 35 U.S.C. § 307(a)* (a decision by the PTO that the re-examined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes). [*7] Moreover, if the PTO should narrow any of the five claims of the '783 patent, the scope of this litigation may be significantly altered and/or simplified. Statistically, there is a good chance that the PTO will do one of these two things. The PTO cancels all claims in approximately twelve percent of all re-examinations, and changes some claims in approximately sixty-four percent. *See KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *4; see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *8 n.8 (D. Colo. 2006)* (there is a 74% chance that the PTO will eliminate, amend, or otherwise limit the claims at issue).

Waiting for the outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims. *See Target Therapeutics, 33 U.S.P.Q 2d at 2023; see also Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. 2003)* (benefits of granting a stay pending re-examination include potentially narrowing the issues, reducing the complexity and [*8] length of trial, allevi-

ating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid); *Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985)*. Along these same lines, if the PTO finds some or all of the claims of the patent are invalid, the Court will have wasted resources and the parties will have spent funds addressing an invalid claim or claims if this action goes to trial prior to the re-examination. *See Softview Computer Prods. Corp. v. Haworth, Inc., 56 U.S.P.Q. 2d 1633, 1636 (S.D.N.Y. 2000)*. On the other hand, if the PTO upholds the validity of the re-examined patent, this is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence. *See Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc., 807 F.2d 955, 961 (Fed. Cir. 1986); Broadcast Innovation, 2003 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *2 (D. Colo. 2006)*. Accordingly, the second factor also weighs in favor of granting a stay.

### 3. Undue Prejudice or Clear Tactical Disadvantage [*9] to Nanometrics

One of Nanometrics's objections to a stay is that "it would merely delay the day of reckoning." Docket No. 38, at 2. It expresses concern that the *'783 patent* is nearing its expiration date of 2010. By statute, the PTO is required to conduct re-examination proceedings with "special dispatch." *See 35 U.S.C. § 305*. Nevertheless, several courts have recognized that the re-examination process may be lengthy. *See, e.g., In re Cygnus Telecommc'ns. Tech. LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)* (finding that re-examinations generally take from six months to three years); *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 n.1 (W.D.N.Y. 1999)* (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals). Mere delay, without more though, does not demonstrate undue prejudice. Assuming the PTO does not cancel or substantively change the *'783 patent*, Nanometrics's potential recovery of damages will not be affected by the re-examination proceeding. *See Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998)*. Nanometrics will be able [*10] to recover for any infringement that occurs prior to 2010. In fact, if the PTO upholds the validity of the patent, then Nanometrics's position is strengthened, and its likelihood of monetary damages will increase. *See Broadcast Innovation, L.L.C., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *10*. Additionally, in this case there is a single patent. Some delay is more than off-set by increased certainty of whether this single patent will survive re-examination and whether there will be any need for litigation.

Nanometrics also objects that, in essence, Nova has abused the re-examination process by utilizing it in other litigation between the parties. As Nanometrics characterizes it, Nova has placed 97 of Nanometrics's patent claims in the re-examination process, with only two claims being rejected and three amended. It appears, however, that Nanometrics is referring to a total of two patents that have been disputed in other cases, and both of these had claims cancelled or amended. This does not suggest a pattern of strategic abuse of the process by Nova.

More importantly, though, is that the re-examination process is a Congressionally created option of which any person or party may avail [*11] themselves. "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art . . . ." *35 U.S.C. § 302*. Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 606 (Fed. Cir. 1985)*. The fact that Nova has employed this statutory option does not itself suggest abuse of it.

Accordingly, Nanometrics has not shown that it will be unduly prejudiced by a stay or that it will it will be subject to a clear tactical disadvantage if a stay is imposed. Nova's motion will therefore be granted. Given the potential duration of the stay however, the motion is granted without prejudice to Nanometric's revisiting the issue with the Court should prejudice accrue, or if factual circumstances change warranting the Court's lifting the stay.

### CONCLUSION

IT IS HEREBY ORDERED THAT Nova's Motion to Stay Proceedings Pending the Reexamination of the Patent-in-Suit [Docket No. 32] is GRANTED.

IT IS SO ORDERED.

February 26, 2007

Saundra Brown Armstrong

[*12]  United States District Judge

# EXHIBIT G

1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   JENS ERIK SORENSEN,                          CASE NO. 07CV2278 BTM (CAB)

12                              Plaintiff,         ORDER RE: (1) PLAINTIFF'S
                                                   REQUEST FOR DEFAULT AND (2)
13           vs.                                   DEFENDANT'S MOTION FOR STAY
                                                   PENDING PATENT
14   HELEN OF TROY and OXO                         REEXAMINATION
     INTERNATIONAL LTD.,
15                              Defendant.
16

17           For the reasons set forth on the record at the status conference held on February 25,

18   2008, the Court denies Plaintiff's request for entry of default and grants Defendants 60 days

19   from the date of the status conference to file their answer on behalf of the correct entities

20   served in this action.  The Court orders the Clerk of the Court  not to enter default pursuant

21   to Plaintiff's request for entry of default. (Docket No. 20.)

22           Also, for the reasons stated on the record and in the Court's order granting stay in

23   Sorensen v. Black and Decker, 06cv1572, Docket No. 243, the Court also GRANTS without

24   prejudice Defendant's motion for stay.  The Court concludes that a reasonable stay is

25   appropriate in this case because the litigation is in its early stages, Plaintiff has not

26   established undue prejudice, and the reexamination will simplify issues for the Court and

27   save expense for the parties.  See, e.g., Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404,

28   406 (W.D.N.Y. 1999). However, if it appears that the reexamination will not be effected within

1

07CV2278

1   a reasonable time, Plaintiff may move to vacate the stay. Additionally, any party may apply

2   to the Court for an exception to the stay if it has specific, valid reasons to believe that it

3   needs to obtain discovery in order to preserve evidence that will otherwise be unavailable

4   after the stay. Defendant is ordered to file a notice informing the Court of the PTO's decision

5   on the pending application for reexamination within 10 days of receipt of such decision.

6       Finally, during the status conference held on February 25, 2008, the Court discussed

7   with the parties the option of transferring the various cases filed by Plaintiff regarding the '184

8   patent and initiating a consolidated multi-district litigation proceeding. The parties informed

9   the Court that they would consider the matter and inform the Court of its decision.

10  IT IS SO ORDERED.

11  DATED: February 28, 2008

12  

13      Honorable Barry Ted Moskowitz
        United States District Judge

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28  

07CV2278

# EXHIBIT H

LEXSEE 2006 U.S. DIST. LEXIS 46623

**BROADCAST INNOVATION, L.L.C., and IO RESEARCH PTY, LTD., Plaintiffs and Counter-Defendants, v. CHARTER COMMUNICATIONS, INC., Defendant and Counter-Plaintiff,**

Civil Action No. 03-cv-2223-ABJ-BNB

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2006 U.S. Dist. LEXIS 46623*

**July 11, 2006, Decided
July 11, 2006, Filed**

**PRIOR HISTORY:** *Broadcast Innovation, L.L.C. v. Charter Communs., Inc., 420 F.3d 1364, 2005 U.S. App. LEXIS 17587 (Fed. Cir., 2005)*

**COUNSEL:** [*1] For Broadcast Innovation, L.L.C., Plaintiff: Barry Alan Schwartz, Kamlet, Shepherd, & Reichert, LLP, Denver, CO U.S.A.; Corby R. Vowell, Edward W. Goldstein, Goldstein & Faucett, LLP, Houston, TX U.S.A; Edward R. Nelson, III, Jonathan Tad Suder, Friedman, Suder & Cooke, Fort Worth, TX U.S.A.

For Io Research, Ltd., Plaintiff: Barry Alan Schwartz, Kamlet, Shepherd, & Reichert, LLP, Denver, CO U.S.A.

For Charter Communications, Inc., Defendant: David C. Doyle, Jose L. Patino, John A. Scott, M. Andrew Woodmansee, Morrison & Foerster, LLP, San Diego, CA U.S.A.; J. Eric Elliff, Morrison & Foerster, LLP, Denver, CO U.S.A.; Robert M. Harkins, Morrison & Foerster, San Francisco, CA U.S.A.

For Comcast Corporation, Defendant: J. Eric Elliff, Morrison & Foerster, LLP, Denver, CO U.S.A.; Robert M. Harkins, Morrison & Foerster, San Francisco, CA U.S.A.

For Comcast Corporation, Counter Claimant: J. Eric Elliff, Morrison & Foerster, LLP, Denver, CO U.S.A.

For Broadcast Innovation, L.L.C., Counter Defendant: Barry Alan Schwartz, Kamlet, Shepherd, & Reichert, LLP, Denver, CO U.S.A; Corby R. Vowell, Edward W. Goldstein, Goldstein & Faucett, LLP, Houston, TX U.S.A; Edward R. Nelson, [*2] III, Jonathan Tad Suder, Friedman, Suder & Cooke, Fort Worth, TX U.S.A.

For Charter Communications, Inc., Counter Claimant: David C. Doyle, Jose L. Patino, M. Andrew Woodmansee, Morrison & Foerster, LLP, San Diego, CA U.S.A; J. Eric Elliff, Morrison & Foerster, LLP, Denver, CO U.S.A; Robert M. Harkins, Morrison & Foerster, San Francisco, CA U.S.A.

For Io Research, Ltd., Counter Defendant: Barry Alan Schwartz, Kamlet, Shepherd, & Reichert, LLP, Denver, CO U.S.A.

**JUDGES:** ALAN B. JOHNSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ALAN B. JOHNSON

**OPINION**

**ORDER GRANTING DEFENDANT'S MOTION FOR STAY PENDING REEXAMINATION OF U.S. PATENT 6,076,094 BY UNITED STATES PATENT AND TRADEMARK OFFICE**

The above-captioned matter comes before the Court on Defendant Charter Communications, Inc.'s Motion to Stay Pending Reexamination of the U.S. Patent 6,076,094 By United States Patent and Trademark Office. Plaintiffs Broadcast Innovation, LLC and IO Research Pty, Ltd. have resisted this motion, timely filing a response on June 29, 2006. After careful consideration of the motion, briefs and governing authorities, and being otherwise fully advised in the premises, the Court FINDS and ORDERS [*3] as follows:

**Background**

**I. Procedural History**

2006 U.S. Dist. LEXIS 46623, *

In this patent infringement and validity action, Plaintiffs Broadcast Innovation, LLC and IO Research Pty, Ltd. (hereinafter "Plaintiffs") allege that Charter Communications, Inc. (hereinafter "Charter") infringed directly or indirectly claims 8, 15, 22, 29 of *United States Patent No. 6,076,094* (hereinafter "*'094 patent*"), a patent Charter claims is invalid for numerous reasons, not the least of which being anticipation and obviousness based on prior art. [1] The *'094 patent* claims a complex distributed database system with applicability to data broadcasting and data casting communications media. [2]

> 1  The Court also notes that Charter has joined in and adopted a host of pleadings filed both in the present action and in the case of *Broadcast Innovation, L.L.C. v. Echostar Communication Corp.,* 240 F. Supp. 2d 1127 (D. Colo 2003), a case also involving the *'094 patent* which has been stayed pending final resolution of the present case.
> 2  The Court eschews an exhaustive recitation of the adjudicative facts surrounding the merits of this case, focusing instead on the posture of the present motion and response.

[*4]  On June 8, 2006, Charter requested that the United States Patent and Trademark Office (PTO) reexamine the *'094 patent* to determine whether the four asserted claims in the present case--claims 8, 15, 22 and 29--are invalid. The information provided to the PTO as a basis for reexamination includes, among other materials, three prior art references that form the basis of Charter's summary judgment motion before this Court: (1) the 1989 World System Teletext and Data Broadcasting Technical Specification; (2) a 1986 article entitled *"BBC Datacast -- A New Generation of Data Transmission Networks Using Broadcast Video";* and (3) a 1988 article authored by John Lilley entitled *"Can Data Broadcasting Actually Sell Itself?"* It is undisputed that this art was not before the PTO during its original examination of the application that eventually issued the *'094 patent.* Unsurprisingly, Charter asks this Court to stay the case awaiting the fully-informed, expert view of the PTO.

## II. Patent Reexamination

### A. Overview

Reexamination is a procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302 [*5] . A request for patent reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." *Id. §* 303(a). Typically, the cited prior art patents or printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination. The examiner is obligated to do so "with special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a).

Within approximately three months of the filing of the reexamination petition, the PTO will determine whether the request raises a "substantial new question of patentability" affecting any claim or claims of the patent. *Kaufman Co. v. Lantech Inc., 807 F.2d 970, 976 (Fed. Cir. 1986).* The examiner, utilizing his expertise, determines if such a "new question" exists by comparing the prior art of record in the original patent application with the prior art cited in the request for reexamination [*6] (although the examiner is not limited to that information). 35 U.S.C. § 303(a). If the prior art patents and/or printed publications are "material" to the reexamination of at least one claim of the patent, a substantial new question of patentability exists. [3] Thereafter, the parties are given the opportunity to provide position statements to the PTO, and the PTO reexamines the patent claims in *ex parte* fashion. If the Commissioner decides *not* to institute a reexamination proceeding, the decision is final and nonappealable.

> 3  The materiality standard is fairly deferential to the PTO. Prior art is "material" to the examination of a claim of the patent if "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication *important* in deciding whether or not the claim is patentable." UNITED STATES PATENT AND TRADEMARK OFFICE, *Manual of Patent Examination Procedure* § 2294 (8th ed., rev. 1, October 2005) (emphasis added).

[*7]  Importantly, a decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes. 35 U.S.C. § 307(a). Cancellation through reexamination, however, is available only when the claims at issue are unpatentable over prior art patents and publications. 35 U.S.C. §§ 301-02. Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence. *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986).* After a decision sustaining the validity of the claims, this burden becomes more difficult to satisfy. *Id.* [4]

2006 U.S. Dist. LEXIS 46623, *

4  Relevant are the Federal Circuit's comments in *American Hoist v. Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350 (Fed. Cir. 1984):*

> [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become *more difficult* to sustain--a fact likewise to be taken into account by the trial judge.

*Id. at 1354.*

[*8]  During the course of a stay, the court retains jurisdiction to respond to changing factual circumstances with appropriate orders. Thus, if a stay is granted prior to the decision from the Patent Office as to whether a substantial new question of patentability exists, the court can issue an order lifting the stay upon a negative determination, thereafter deciding all pending motions and, if necessary, proceeding to trial. *See, e.g., Grayling Indus. v. GPAC Inc., 19 U.S.P.Q.2d 1872, 1874 (N.D. Ga. 1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2d 1496, 1496 (C.D. Cal. 1991).* Similarly, the court may dissolve the stay when preliminary reports from the Patent Office reveal that some of the claims at issue will survive reexamination. The court would then await the PTO's decision for guidance on pending motions and, if necessary, trial. *See, e.g., Purolite Int'l, Ltd. v. Rohm & Haas Co., 24 U.S.P.Q.2d 1857, 1860 (E.D. Pa. 1992); Rohm and Haas Co. v. Brotech Corp., 24 U.S.P.Q.2d 1369, 1372 (D. Del. 1992).* If no claims survive, neither does the court's work.

**B. Scope and Purpose: Expertise**

"Congress instituted [*9] the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektronedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002)* (citing H.R. REP. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460)); *see also* Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach A Motion to Stay Litigation Pending the Outcome of Reexamination, 66 GEO. WASH.L.REV. 172, 172 (1997)* ("Congress decided that the often-asserted validity issue, which can involve intricate technological questions, deserved special treatment. Thus, Congress established a patent

reexamination procedure that allows the Patent and Trademark Office, instead of a district court, to consider validity issues that the PTO overlooked during the initial examination.").

Shifting the patent validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have [*10] been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987).*

Early drafts of the reexamination statute expressly provided for a stay of court proceedings during all reexamination proceedings. *See* S. REP. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. REP. 5075, 96th Cong., 1st Sess. § 310 (1979); S. REP. 2446, 96th Cong., 2d Sess. § 310 (1980). However, an express provision was ultimately deemed unnecessary because courts already had [*11] the power to stay civil actions "to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).* 5 "When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *Id.* To no surprise, courts frequently note that "[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally

2006 U.S. Dist. LEXIS 46623, *

granting stays." *Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991).*

5   The pertinent House report explained as follows:

> The bill [*35 U.S.C. §§ 301-07*] does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R. REP. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463).

[*12] C. Relevant Factors Weighing For Or Against A Stay

"A motion to stay an action pending the resolution of a reexamination proceeding in the United States Patent and Trademark Office is directed to the sound discretion of the court." *Braintree Laboratories, Inc. v. Nephro-Tech, Inc., 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237 (D. Kan. 1997); see also Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). As mentioned above, there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Whatley v. Nike, 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000); see also In re Laughlin Products, Inc., 265 F. Supp. 2d 525, 530 (E.D. Pa. 2003)* (same).

"In deciding whether to grant a stay, the court must weight the benefits of the stay against the costs." *Motson v. Franklin Covey Co., 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664, *1 (D.N.J. 2005).* Courts consider a number of factors in determining whether to stay [*13] litigation pending PTO reexamination, including: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete

and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) "whether a stay will reduce the burden of litigation on the parties and on the court." *Tap Pharm. Prods. Inc. v. Atrix Labs., Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); Nexmed Holdings, Inc. v. Block Inv., Inc., 2006 U.S. Dist. LEXIS 3150, 2006 WL 149044, *1 (D. Utah Jan. 19, 2006)* (citing *In re Laughlin Prods., 265 F. Supp. 2d at 530*); *Brown, 18 U.S.P.Q.2d at 1496* (detailing the expertise factor). [6] No one factor is controlling--the totality of the circumstances governs.

6   While the *Tap Pharmaceuticals* court created a fourth category examining the "burden of litigation on the parties and on the court," see *70 U.S.P.Q.2d at 1320*, most courts merge this inquiry with the "simplification of issues" factor. *Accord Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)* (collecting cases); *Versa Corp. v. Ag-Bag Intern. Ltd., 2001 U.S. Dist. LEXIS 14657, 2001 WL 34046241, *1 (D. Or. 2001)* (describing this factor as "the orderly course of justice measured in terms of the *simplifying or complicating of issues*, proof, and questions of law which could be expected to result from a stay") (emphasis added).

[*14] Analysis

I. Will A Stay Simplify the Issues Before the Court?

Courts routinely consider the expertise of the Patent Office, under which claim validity will be rigorously reevaluated, as an important factor in determining whether to stay its proceedings. *Accord Gould, 705 F.3d at 1342; Middleton, Inc. v. Minn. Mining & Mfg. Co., 2004 U.S. Dist. LEXIS 16812, 2004 WL 198669, at *3 (S.D. Iowa 2004); GPAC Inc. v. D.W.W.Enter. Inc., 144 F.R.D. 60, 23 U.S.P.Q.2d 1129, 1134 (D.N.J. 1992); see also Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996)* ("Because the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."). The technical nature of the patent claims in question increases the utility of PTO expertise, which is further amplified by the need to examine prior art and publications not before the PTO during its original patent examination. *See Brown, 18 U.S.P.Q.2d at 1496* ("[R]eexamination by the PTO when issues relevant to prior art are involved is especially [*15] helpful given the PTO's expertise."). In turn, patent cases *not* hinging upon the consequences of prior art references have less of a need for the PTO's expertise. *See Emhart Indus., Inc., 3 U.S.P.Q.2d at 1892 n.3* (dis-

2006 U.S. Dist. LEXIS 46623, *

tinguishing the matter before it on such grounds, explaining that if "the issue of prior art was involved, the PTO's opinion [would] be invaluable.") (quotation omitted).

Confronted with a motion to stay pending PTO reexamination after significant discovery, pretrial conference and trial dates set, a neighboring district court concluded as follows:

> The technical expertise provided by the reexamination proceeding . . . will be extremely helpful to this Court should further consideration of this matter be necessary. Indeed, the Court invites a final determination by the PTO as to the validity of plaintiff's patent claims. The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld, or to be narrowed in some degree. In any event, the expert view of the Patent Office examiner [*16] will certainly benefit this Court. Thus, the Court is of the opinion that a stay of the trial of this matter should be granted to allow the PTO to complete the reexamination proceeding.

*Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985) (staying trial pending conclusion of the reexamination proceedings).[7]

Indeed, some courts consider this factor of primary importance. *See, e.g., Dresser Indus., Inc. v. Ford Motor Co.,* 530 F. Supp. 303, 307 (N.D. Tex. 1981) ("The major benefit of staying litigation pending reconsideration of a patent under [reexamination] is that it affords the Court the assistance of the Patent Office's specialized expertise on technical questions of validity."); *cf. Pegasus Development Corp. v. Directv, Inc.,* 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, *2 (D. Del. 2003) (deciding that by staying a highly technical case involving computer programming communication systems, "the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency").

---

7  Also interesting to note is that the patent at issue in *Loffland* appears quite simple when compared to the *'094 patent* presently before the Court--the technology in *Loffland* consisted of patent covering an elevating catwalk used on

drilling rigs. *See Loffland Bros.,* 225 U.S.P.Q. at 886.

[*17]  The *Loffland Bros.* court also understood the PTO's expertise to have benefits beyond educating the court. That is, simplification may occur by the very nature of the reexamination procedure itself, as claims, arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the parties and the court. The Federal Circuit has explained that a major "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings)." *Gould, 705 F.2d at 1342 (Markey, C.J.); see also Canady, 271 F. Supp. 2d at 68* ("[C]ourts often stay proceedings, such as in the instant case, to wait for reexamination results that will simplify litigation by eliminating, clarifying, or limiting the claims."). "If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court." *Middleton, Inc., 2004 U.S. Dist. LEXIS 16812, 2004 WL 1968669 at *3.* "This is because the scope of the patent claims, which the PTO may narrow [*18] or otherwise limit, controls the outcome of any subsequent infringement analysis." *Id.; see also, e.g., Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed. Cir. 2002).

Combining these benefits, countless courts have touted the value of streamlining voluminous and complicated patent cases. For example, the court in *Motson* found that the benefits derived from the PTO's reexamination outweighed the fact that much effort had already been expended by the parties:

> [E]ntry of a stay, pending reexamination by the PTO, may simplify or even eliminate the need for trial on the remaining validity challenge in this matter. The reexamination procedure has the potential to either uphold or narrow the claims in the plaintiff's patent. In any event, the technical expertise of the PTO examiner may be helpful to the Court should further consideration of the matter be necessary after reexamination. . . . Although discovery and briefing expenses have already been incurred, a trial at this point on the sole remaining issue in the case may compound those costs unnecessarily if the PTO reexamination eliminates the need for a trial or creates a need to relitigate [*19] other issues.

2006 U.S. Dist. LEXIS 46623, *

*Motson, 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664 at *1-2.*

Despite being less than two-and-a-half months from trial and despite the substantial monetary expenditures by each party, the court in *Gioello Enterprises* provided a similar explanation for granting a stay:

> Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001. Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement--two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions.

*Gioello Enterprises, Ltd.,* 2001 WL 125340 at *1.

This question of "resources" was detailed by the Southern District of New York in *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000), a case bearing many resemblances to the [*20] matter *sub judice.* There, the court addressed a stay pending PTO reexamination of allegedly relevant prior art. While the motion was brought by the *plaintiff* in that case, the instructiveness of the court's language applies equally to the present matter:

> Although [defendant] correctly notes that plaintiffs had not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to [defendant] of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not, without more, entitle [defendant] to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past

events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims. [*21]

> Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served . . . and the Pretrial Order has not yet been prepared. I[t] would be a serious waste of both the parties' and the Court's resources if the . . . summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

> Third, a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.

*Softview Computer Prods. Corp.,* 56 U.S.P.Q.2d at 1636; *see also Bausch & Lomb Inc.,* 914 F. Supp. at 953 ("If this Court were to deny the stay and proceed to trial, it is possible that the time, resources, and significant efforts of [*22] all those involved in such a trial would be wasted. Because a finding by this Court that the '607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. Not only would such a scenario cause Alcon significant harm[,] but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the reexamination is to be conducted "with special dispatch" (*35 U.S.C. § 305*), I find that a stay of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.").

In the present matter, Charter argues that a stay "will simplify the issues, avoid inconsistent rulings and conserve the resources of the Court and the parties." *Defendant's Motion,* at 7. Broadcast and IO Research, on the other hand, summarily state that the possibility of simplification is "equivocal." *Plaintiff's Response,* at 3. For the reasons detailed above as well as those to follow, the Court finds that this factor weighs heavily in favor of granting a stay.

2006 U.S. Dist. LEXIS 46623, *

The heart of this complicated patent case involves the impact [*23] of several prior art references--an issue the PTO is far better suited to address given the technology at issue in this case. *Ethicon, Inc., 849 F.2d at 1427.* Moreover, because this prior art was not before the PTO during its original patent examination, the Court would benefit immensely from the PTO analysis of it. *Accord Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636; Emhart Indus., Inc., 3 U.S.P.Q.2d at 1890, 1892 n.3; Indust Wireless Spectrum Techs., Inc. v. Motorola Corp., 57 U.S.P.Q.2d 1662, 1663 (N.D. Ill. 2001); Brown, 18 U.S.P.Q.2d at 1496* (noting that "[t]he PTO is in a better position than the Court to evaluate the validity of the patent [at issue] in view of the prior art references.").

Judged solely by this factor, a stay would further the interests of judicial economy and the conservation of the parties' resources, as well as that of the court. Charter's pending reexamination petition involves the same issues currently before this Court. If the PTO, utilizing its unique expertise, determines that all or some of the '094 claims are invalid, that determination will either dispose [*24] of this litigation entirely or at least aid the Court in adjudicating this case. *See In re Cygnus Telecomms. Tech., LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)* ("A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."). Moreover, "[s]ince the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict." *Gioello Enterprises, Ltd., 2001 WL 125340 at *2; see also Bayer AG v. Novartis Crop Prot. Inc., 55 U.S.P.Q.2d 1509, 1511 (M.D. La. 2000)* (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice"); *Hewlett-Packard Co. v. Acuson Corp., 1993 U.S. Dist. LEXIS 6449, 1993 WL 149994, *2 (N.D. Cal. 1993)* ("Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly [*25] narrowed by the patent reexamination process and the expertise of its officers."); *Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc., 203 F. Supp. 794, 796 (D. Va. 1962)* (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar). The Court, unlike the PTO, can exercise its direction to avoid this conflict and potential for waste. [8]

[8]  The Court is also cognizant of the fact that the PTO grants more than nine of every ten petitions for reexamination. *See* UNITED STATES PATENT AND TRADEMARK OFFICE, *Ex Parte*

*Reexamination Filing Data,* at 1, P5 (Sept. 30, 2005) (noting 91% acceptance out of 7,510 requests). If and when the PTO grants Charter's petition, history also teaches that there is a 74% likelihood that the PTO will eliminate, amend or otherwise limit the claims at issue, which will significantly alter the nature and amount of work for the attorneys, the court and the jury. *See id.* at 2, P9; *Tap Pharm. Prods. Inc., 70 U.S.P.Q.2d at 1320.*

[*26] **II. Time and Timing**

Broadcast and IO Research argue that this factor "is decidedly pro-Plaintiffs," as "[t]rial is less than three months away. *Plaintiffs' Response,* at 5. [9] Charter acknowledges the trial setting, but insists that the proximity of trial, standing alone, is not a reason to blindly deny an otherwise appropriate stay.

9  Indeed, Plaintiffs' entire argument regarding this factor consists of that single statement.

This factor, at first glance, likely weighs in favor of the Plaintiffs and thus against a stay. Although discovery is not complete, *see Stipulation Regarding Additional Discovery* at 2, a trial date has been set for September 11, 2006. If these two litigation aspects were all that courts considered when assessing this factor, it might lean towards Broadcast and IO Research. However, courts considering this factor do not stop at discovery and trial settings, but rather, routinely inquire as to the occurrence summary judgment arguments, rulings on summary judgment, and [*27] the status of the final pretrial order, among other elements. *See, e.g., Gioello Enterprises, Ltd., 2001 WL 125340 at *1* (noting trial was set, but expressing concern for pending summary judgment motions); *Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636* (same concern as to "extremely voluminous summary judgment motions" and unfinished final pretrial order); *Bausch & Lomb Inc., 914 F. Supp. at 953* (same); *Middleton, Inc., 2004 U.S. Dist. LEXIS 16812, 2004 WL 198669 at *4* (same).

In sum, the proximity of the trial date does not preclude entry of a stay. "Courts have granted stays even where discovery has been completed, and even when a trial date has been scheduled or is forthcoming." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc., 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003); see also Perricone v. Unimed Nutritional Services, Inc., 2002 U.S. Dist. LEXIS 17613, 2002 WL 31075868, *3 (D. Conn. 2002)* (noting that courts "have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation"). For every court that yields to completed discovery and a looming trial date, another [*28] court finds these

2006 U.S. Dist. LEXIS 46623, *

dates outweighed by other factors--be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court. Put simply, trial time doesn't always tell the tale. *See, e.g., Gould*, 705 F.2d at 1342 (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc., 2004 U.S. Dist. LEXIS 16812, 2004 WL 198669 at \*10* (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Loffland Bros.*, 225 U.S.P.Q. at 887 (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *see also Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636 (granting stay; noting that "although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been [\*29] served, . . . and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co.*, 19 U.S.P.Q.2d at 1789 (granting stay despite the fact that case was set for trial in less than a month); *Motson, 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664 at \*2* (granting stay despite discovery being complete and summary judgment decided). [10]

> 10  A more detailed balancing process was explained by the court in *Ralph Gonnocci Revocable Living Trust*, who ultimately ruled in favor of a stay:
>
>> Undoubtably the parties have spent considerable time and resources thus far--substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial.
>
> *Id.* at 1758.

In the [\*30] present case, although trial is set for mid-September, significant work remains for the parties and the Court. First, numerous voluminous dispositive motions are pending, including, but not limited to, Broadcast and IO Research's motion for summary judgment of infringement, Charter's motion for summary judgment of non-infringement and Charter's motion for summary judgment of invalidity. Furthermore, the parties have recently stipulated to additional discovery, including supplemental document production, supplemental responses to written discovery, supplemental expert reports, rebuttal expert reports, and expert depositions related to those supplemental expert reports. *Stipulation Regarding Discovery And Expert Report Supplementation,* at 2 (filed June 22, 2006). According to this stipulation, the parties hope to conclude this work in late August. *Id.* [11] In addition to preparing their final pretrial memorandums and other trial presentations, numerous pretrial filings remain for both parties, including submission of deposition designations, oppositions to more than forty motions *in limine* (according to Charter, and not disputed by Broadcast or IO Research), as well as proposed [\*31] jury instructions and special verdict forms. Charter argues that

> Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the four asserted claims will survive the reexamination process. The reexamination proceedings before the PTO may well [alter], moot or resolve the issues set for trial in less than three months, and staying the trial pending conclusion of the PTO's review will eliminate the . . . additional expense of trial preparation [and the] risk of inconsistent rulings.

*Defendant's Motion,* at 13.

The Court agrees. *See Tap Pharm. Prods. Inc., 70 U.S.P.Q.2d at 1320* (noting similarly, i.e., "There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of the issues will allow both parties to conserve time and resources."). A more detailed glance at the timing factor reveals, beyond any peradventure of doubt, that a stay is appropriate in this case.

> 11  To this end, the Court fails to see the significance of Plaintiffs' argument that *Charter* acted as the initiator of the stipulation, for the fact remains that *both* parties stipulated to additional discovery.

**[\*32] III. Will A Stay Unduly Prejudice the Nonmoving Party or Present a Clear Tactical Advantage for the Moving Party?**

This factor is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?* Because they do, this factor weighs heavily in favor os staying the case. The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits. *See, e.g., Robert H. Harris Co., 19 U.S.P.Q.2d at 1788.*

Plaintiffs make the vague argument that a delay in trial is unfair. However, this argument fails to address the crucial question of the prejudice factor--i.e., will a stay unduly prejudice the legal remedy sought by the non-movants? *Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636; Ingro v. Tyco Indus., Inc., 227 U.S.P.Q. 69, 70 (N.D. Ill. 1985).* Clearly it will not. If the PTO does not invalidate or otherwise alter the claims of the *'094 patent*, the Plaintiffs' legal remedy remains unaffected, and they will have over a decade to exploit the *'094 patent*. Moreover, if the claims are narrowed, *both* sets of parties will have benefitted by avoiding [\*33] the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Motson, 2005 U.S. Dist. LEXIS, 2005 WL 3465664 at \*1* ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting *Pegasus Dev. Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at \*2*). Indeed, the only possibility of irreparable harm to Broadcast and IO Research would exist if the Court chose *not* to stay the case. That is, if the Court finds that the *'094 patent* is valid and that Charter has infringed it, and orders Charter to pay damages to Broadcast and IO Research, then Broadcast and IO Research "would have no ability to recover those damages if at a later date the PTO determine[s] that the ['094] patent is invalid." *Bausch & Lomb Inc., 914 F. Supp. at 952.* The Court finds such a possibility unacceptable.

In sum, this factor weighs in favor staying the [\*34] case because monetary relief--the only relief Plaintiffs seek--is fully capable of restoring Plaintiffs to the *status quo ante.* Accord *Brown, 18 U.S.P.Q.2d at 1496* ("While the Court recognizes that the reexamination could cause significant delay in the proceedings, the complexity of the case and the fact that Mr. Brown can be fully compensated should he prevail at the reexamination and trial support staying this action."). [12]

12  Moreover, a stay would not affect the issue of damages accruing during the pendency of the reexamination period should Plaintiffs ultimately prevail at trial. The Federal Circuit has considered the impact of a completed reexamination upon the viability of infringement claims relating to the reexamined patent. *See, e.g., Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998).* The general rule is that the owner of a reexamined patent "is entitled to infringement damages, *inter alia,* for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are 'identical.'" *Id.* (citing 35 U.S.C. §§ 252 and 307(b); *Tennant Co. v. Hako Minuteman, Inc., 878 F.2d 1413, 1417, (Fed. Cir. 1989)).*

**[\*35] IV. Conclusion**

A future trial date, standing alone, does not obviate otherwise unassailable reasons to stay these proceedings. At the very least, awaiting outcome of reexamination will facilitate motion disposition and trial, as valuable efficiencies will be gained by awaiting the input of the PTO on the scope of the claims in light of the prior art that will be considered during the reexamination proceedings.

The Court's decision mirrors, in many respects, that made in *Middleton* by the Honorable James E. Gritzner of the United States District Court for the Southern District of Iowa. By the time Judge Gritzner ruled on the defendant's motion to stay, the "long and convoluted" case before him was eight years old--"proceeding from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times." *Middleton, Inc., 2004 U.S. Dist. LEXIS 16812, 2004 WL 1968669 at \*1.* Like this Court, Judge Gritzner was faced with the choice of ruling on numerous motions for summary judgment--in fact, three motions presenting legal questions nearly identical to the motions presently before this Court--or staying the case pending PTO reexamination. [\*36] *Id.* The case was set for trial in less than two months. *Id.* The plaintiff in *Middleton*--much like Broadcast and IO Research--resisted the motion to stay "based primarily on the short time left before trial and the delay in seeking reconsideration." *Id.* Judge Gritzner's thorough and thoughtful explanation warrants repeating:

In the present case, the litigation has been ongoing for over eight years. The trial date is set and is scheduled for the week of October 12, 2004 [i.e., less than two months away]. In addition, several

2006 U.S. Dist. LEXIS 46623, *

motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

However, these facts should be weighed against the benefits of issuing a stay. As argued by [the defendant], the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; [*37] (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "be conducted with special dispatch."'·Gould, 705·F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, see Toro Co. [v. L.R. Nelson Corp.], 223 U.S.P.Q. [636,] 638 [(C.D. Ill. 1984)]; the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the [*38] issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamina-

tion and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with [Plaintiff's] contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the [*39] continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

2004 U.S. Dist. LEXIS 16812, [WL] at *5-6.

This Court finishes where the Southern District of Iowa did two short years ago.

Accordingly, and for the foregoing reasons, it is hereby

ORDERED that Defendant Charter Communications, Inc.'s Motion to Stay Pending Reexamination of the U.S. Patent 6,076,094 By United States Patent and Trademark Office shall be, and now is, GRANTED. It is further

ORDERED that the proceedings in the above-captioned case are STAYED from the date of this Order until further notice. It is further

ORDERED that the parties shall immediately advise the Court of the PTO's decision to grant or deny Defendant's petition for reexamination of the '094 patent, this Court continuing or lifting the present stay pending that initial determination. It is further

ORDERED that the parties shall advise the Court of any final decision that results from the PTO's reexamination of the '094 patent.

Dated this 11th day of July, 2006.

2006 U.S. Dist. LEXIS 46623, *

ALAN B. JOHNSON                    SITTING BY DESIGNATION

UNITED [*40] STATES DISTRICT JUDGE

# EXHIBIT I

LEXSEE 1985 U.S. DIST. LEXIS 19300

**BEN INGRO, Plaintiff, v. TYCO INDUSTRIES, INC., SEARS ROEBUCK AND CO., INC., MONTGOMERY WARD & CO., INC., SPIEGEL ORDER STORES, INC., VENTURE STORES, INC., OSCO DRUG, INC., TOYS "R" US, INC., K MART CORPORATION, CIRCUS WORLD TOY STORES, INC., SERVICE MERCHANDISE COMPANY, INC., ZAYRE CORP., WIEBOLDT STORES, INC., CHILDREN'S PALACE, INC., J. C. PENNEY COMPANY, INC., HOUSEHOLD MERCHANDISING, INC., and McDADE & COMPANY, Defendants**

No. 84 C 10844

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1985 U.S. Dist. LEXIS 19300; 227 U.S.P.Q. (BNA) 69*

**May 31, 1985, Decided**

OPINION BY: [*1] KOCORAS

OPINION

*MEMORANDUM OPINION*

CHARLES P. KOCORAS, District Judge:

In December of 1984, plaintiff Ben Ingro filed a complaint against Tyco Industries, Inc. and fifteen of its customers alleging infringement of plaintiff's patent, U.S. Patent 3,810,515. On or about January 23, 1985, Tyco filed a request for reexamination of the patent with the U.S. Patent and Trademark Office (PTO); on April 5, 1985, the PTO granted the request on the grounds that it raised a substantial new question of patentability affecting all claims of the patent. In the meantime, on February 12, 1985, Tyco filed a motion to stay the proceedings in this litigation pending a final determination in the reexamination proceedings. For the following reasons, Tyco's motion will be granted.

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. A request for such a reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were [*2] not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with

the patent conducts the reexamination and is obligated to do so "with special dispatch" *37 C.F.R. § 1.550(a)*.

Determining the desirability of staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO an issue, patent claim validity, involved in the dispute before the district court. As Chief Judge Markey, writing for the Court of Appeals for the Federal Circuit noted:

One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding). Early versions of what became the reexamination statute (citation omitted) expressly provided for a stay of court proceedings during reexamination [*3] (citation omitted). An express provision was deemed unnecessary, however, as explained in the House report:

THe bill does not provide for a stay of court proceedings. It is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pre-trial maneuvering which attempts to *circumvent* the reexamination procedure. It is anticipated that these measures provide a useful and necessary *alternative* for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner. (Original emphasis) (Citations omitted)

1985 U.S. Dist. LEXIS 19300, *; 227 U.S.P.Q. (BNA) 69

*Gould v. Control Laser Corp., 705 F.2d 1340 (F. Cir. 1983).* Moreover, as an Oklahoma district court has noted:

Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts. Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation. Yet, in cases . . . which have not progressed beyond the initial litigation stages and [*4] in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized.

*Digital Magnetic Systems, Inc. v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982).* Although the present case is in its initial stages (only a single interrogatory and three production requests have been served), and plaintiff has the adequate remedy of money damages if his patent is found to be valid and infringed, plaintiff objects to a stay of the proceedings on nine grounds.

Three of plaintiff's objections to a stay have recently been considered and rejected by the Federal Circuit Court of Appeals, which, as of October 1, 1982, has had exclusive appellate jurisdiction over all patent infringement cases; a fourth objection has been rendered moot by the PTO's granting Tyco's request for reexamination. Three of plaintiff's objections allege constitutional infirmities with the reexamination proceedings; these objections have now been answered by the Federal Circuit Court of Appeals' holding in *Patlex Corp. v. Mossinghoff,* No. 84-699 (F. Cir. March 7, 1985). There, the Federal Circuit affirmed the decision of the district court that *35 U.S.C. §§ 301-307,* the reexamination [*5] statutes, do not violate the *Fifth Amendment,* the *Seventh Amendment,* or Article III.

Plaintiff has also protested that Tyco's requested stay is premature, since the request for reexamination has not been granted as of the time plaintiff responded to the motion. Defendants' request was granted on April 5, 1985, however, and thus, plaintiff's objection of prematurity is now moot.

A fifth objection plaintiff makes to the motion for a stay is the allegation that Tyco made the request for reexamination to harass plaintiff and to delay the litigation unduly and unreasonably. The evidence does not support plaintiff's allegation. Tyco explains that although plaintiff invited Tyco on April 5, 1984, to institute reexamination proceedings and indicated that plaintiff would then defer to the PTO, Tyco chose not to institute reexamination proceedings at that time since additional negotiations continued to occur between the parties. Tyco also contends that it had hoped plaintiff would be persuaded

by Tyco's position that the new prior art not previously considered by the PTO invalidated the patent, and Tyco had hoped to avoid the expenses involved in a request for reexamination. Tyco's explanation [*6] is buttressed by the fact that after Tyco ;initially identified to plaintiff the prior art not previously considered by the PTO, plaintiff later disclaimed claims 1 and 2 of his patent.

Tyco also points out that in response to K Mart Corporation's Interrogatory No. 1, plaintiff indicated that it "became aware of K Mart's infringing use and sale of his patented magnetic car" as early as 1977 and confirmed such sales each year since 1977. Nevertheless, plaintiff waited to commence litigation almost seven years after his first knowledge of alleged infringement and almost six years years after the alleged first contact between plaintiff and Tyco. The court agrees that especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings, which on the average involve 15.9 months from filing date to termination in the PTO, will constitute neither undue nor unreasonable delay. (Reexamination Filing Data, Defendant's Exhibit B). Plaintiff's concern that Tyco or the other defendants may file multiple requests for reexamination for the purpose of delay if the current request is denied is also unwarranted; this court can later modify or [*7] vacate the stay if it is abused.

Plaintiff's initially most appealing argument against a stay is entitled "Proof of Damages Becomes Stale" and alleges that if discovery must wait until the termination of the reexamination proceedings, Ingro "will have lost the opportunity to collect necessary documents from the various defendants and third parties." However, as Tyco points out, seeking discovery relating to proof of damages from defendants at this point in the litigation would be premature until after discovery on liability has been conducted. Plaintiff's claimed need "to go back to 1970 to prove prior invention over some of the cited patents" will probably not require discovery or others, and defendants have pledged to make every effort to retain existing records relating to the manufacture, use, and sale of the products involved in this litigation. Tyco has also indicated that because of Aurora Products of Canada, Ltd.'s alleged liquidation, Tyco would not object to plaintiff's attempt to obtain from Aurora relevant documents and the identification of prospective witnesses. Because of the time, effort, and expense involved in discovery of damages and other issues involving the named [*8] defendants and third parties other than Aurora, however, such other discovery should await the outcome of the reexamination proceedings.

Plaintiff's next argument, that summary judgment would be a superior alternative to a stay of the proceedings, makes little sense. As Tyco points out, plaintiff argues inconsistent positions; on one hand, he argues that

Page 3

1985 U.S. Dist. LEXIS 19300, *; 227 U.S.P.Q. (BNA) 69

the obviousness test as applied to the patented invention is simple, indicating that no genuine issues of material fact exist; on the other hand, he contends that experts may be necessary to set forth or assess the facts and seeks a trial by jury of the "difficult issues of obviousness." Moreover, a motion for summary judgment is neither pending nor believed to be appropriate at the present time.

Contrary to plaintiff's next argument against a stay, that only patent holders lose during reexamination proceedings, plaintiff's patent probably will be enhanced if it is recertified in the reexamination proceedings. As the Federal Circuit has stated with respect to a successful reissue application:

[I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of [*9] the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain - a fact likewise to be taken into account by the trial judge.

*American Hoist v. Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1354 (Fed. Cir. 1984). Furthermore, if the patent is upheld upon reexamination, plaintiff may recover from any who have infringed in the interim.

Finally, rather than a stay pending reexamination running counter to the reexamination statute's legislative history, such legislative history indicates Congress and the testifying witnesses approved of courts liberally granting stays within their discretion. As the Federal Circuit recently stated:

The bill's proponents foresaw three principal benefits [of the reexamination legislation]. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. *See Senate Hearings* at 1, wherein Senator Bayh said that reexamination would be "an aid" to the trial court "in making an informed decision [*10] on the patent's validity". Third, reexamination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents". 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

When Congress voted the reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve. Congress, without apparent objection, applied the legislation to all unexpired patents.

*Patlex Corp., v. Mossinghoff*, No. 84-699, slip. op. at 15-16 (F. Cir. March 7, 1985).

Accordingly, for the foregoing reasons, Tyco's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, will be granted.

It is so ordered.

Charles P. Kocoras, United States District Judge

# EXHIBIT J

LEXSEE 2006 US DIST LEXIS 15754

**KLA-TENCOR CORPORATION, a Delaware corporation, Plaintiff, v. NANOMETRICS, INC., a California corporation, Defendant.**

No. C 05-03116 JSW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2006 U.S. Dist. LEXIS 15754*

March 16, 2006, Decided
March 16, 2006, Filed

COUNSEL: [*1] For KLA-Tencor Corporation, a Delaware corporation, Plaintiff: Michael N. Edelman, Michael H. Kalkstein, Ben (Harmohinder) S. Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto, CA.

For Nanometrics Inc., a California corporation, Defendant: Peter H. Kang, Matthew Laurence McCarthy, Teague I. Donahey, Sidley Austin LLP, San Francisco, CA.

JUDGES: JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

OPINION BY: JEFFREY S. WHITE

OPINION

**ORDER GRANTING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF PATENTS-IN-SUIT**

Now before the Court is Defendant Nanometrics, Inc.'s ("Nanometrics") Motion to Stay Proceedings Pending Reexamination of Patents-in-Suit. Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS Defendant's motion and STAYS ALL PROCEEDINGS with respect to all patents-in-suit.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"), the assignee of *United States Patents Nos. 6,483,580* ("the *580 patent*") and 6,590,656 ("the *656 patent*"), brought this action claiming that Nanometrics had infringed these patents by manufacturing, offering [*2] for sale and/or selling six devices, including but not limited to the Atlas metrology system and/or other metrology

systems. (Declaration of Michael N. Edelman in Support of KLA-Tencor's Opposition to Stay ("Edelman Decl."), Ex. A at 2-3; Declaration of Edward V. Anderson in Support of Motion to Stay Pending Reexamination ("Anderson Decl. 1"), Ex. A at 1.) KLA-Tencor then filed a first amended complaint adding a cause of action for infringement of *United States Patent No. 6,611,330* ("the *330 patent*"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have propounded, and one has responded to, their first set of requests for production of documents. (*See* Declaration of Edward V. Anderson in Support of Motion to Stay and *Ex Parte* Motion to Shorten Time ("Anderson Decl. 2"), Ex. 4; *see also* Edelman Decl., Exs. L-N.) The tutorial has been set for August 22, 2006, but no trial date has yet been set. Magistrate Judge Spero has established a schedule for an exchange of discovery plans and a date and time for a discovery conference. Neither claim construction briefing nor discovery has occurred on the *330 patent* infringement cause of action that KLA-Tencor [*3] has recently added.

On December 21, 2005, the United States Patent & Trademark Office ("PTO") granted Nanometrics's requests for reexamination of the *580 patent* and the 656 patent. (Anderson Decl. 2, Exs. 1, 2.) On February 21, 2006, Nanometrics filed a request for reexamination of the *330 patent* with the PTO. (Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant motion. Nanometrics moves the Court for a stay of all proceedings, including the litigation as to the *330 patent* infringement cause of action, pending the reexamination of the *580* and 656 patents. (Mot. at 2.) KLA-Tencor urges this Court to deny Nanometrics's motion on the following grounds: (1) a stay should not be entered where the reexamination does not implicate all patents-

2006 U.S. Dist. LEXIS 15754, *

in-suit; (2) considerations of judicial efficiency militate in favor of permitting discovery on the infringement of all patents-in-suit; (3) a stay would substantially prejudice KLA-Tencor and unnecessarily delay the action given the slow pace of PTO reexamination proceedings; and (4) a stay would put KLA-Tencor at a clear tactical disadvantage.

## ANALYSIS

### A. Legal Standards Applicable to [*4] a Motion to Stay Proceedings Pending Reexamination.

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of *section 301*." *35 U.S.C. § 302.* The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request. . . ." *35 U.S.C. § 303(a).* The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305.*

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983)).* When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, [*5] including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000).* There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).*

### B. The Early Stage of the Litigation Weighs in Favor of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); [*6] *see also ASCII Corp., 844*

*F. Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. *(See Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.)* Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the *330 patent*-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023.*

### C. A Stay Will Not Unduly Prejudice KLA-Tencor.

In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, [*7] at *7.* Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. *Rohm and Haas Co. v. Brotech Corp., 24 U.S.P.Q. 2d 1369, 1372 (D. Del. 1992).* However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework." *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).* Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. *See id.* Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. *See id.* Under such circumstances, the delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *See id.*

As a result, courts also consider evidence of dilatory [*8] motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* KLA-Tencor has failed to show, beyond the delay implicit in the reexamination process, how it would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. In particular, the Court finds no evidence of dilatory tactics on Nanometrics's part in seeking reexamination at this early stage of the litigation. This is not a case where

reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, KLA-Tencor filed its complaint on August 1, 2005, the PTO granted Nanometrics's requests to reexamine the *580* and 656 patents on December 21, 2005, and Nanometrics filed its motion to stay proceedings on January 6, 2006. (Edelman Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In addition, KLA-Tencor filed a stipulation and proposed order seeking to add the [*9] *330 patent* on January 26, 2006, and Nanometrics filed a request for reexamination of the *330 patent* on February 21, 2006. (Nanometrics, Inc.'s Notice of New Authorities, Ex. A.) This does not evince dilatory motives. Furthermore, KLA-Tencor will be fully compensated for delays if it prevails at reexamination and trial. *See Brown v. Shimano Am. Corp., 18 U.S.P.Q. 2d 1496, 1496 (C.D. Cal. 1991).* Thus, because a stay will not unduly prejudice KLA-Tencor, this factor also weighs in favor of granting a stay.

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.**

The PTO is currently reexamining two of the three patents-in-suit and reviewing Nanometrics's request for reexamination of the third patent-in-suit. (Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of New Authorities, Ex. A.) Statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases. *Rohm and Haas, 24 U.S.P.Q. 2d at 1372.* These statistics [*10] "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *Id.* This is because "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the court with the opinion of the PTO and clarifying the scope of the claims." *Target Therapeutics, 33 U.S.P.Q. 2d at 2023; see also Pegasus, 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *1-2* (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted. In *Methode*, for example, the court stayed the litigation of both

the reexamined and non-reexamined patents because the issues regarding the non-reexamined patent "may be narrowed or amended as a result of the [*11] PTO's decision." *Id.* Moreover, the *Methode* court stayed the litigation of both reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action of the two patents. *Id.* If the court stayed the litigation with respect to the reexamined patents-in-suit only, duplicative discovery could have resulted because there were likely to be common documents and witnesses in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determined yet whether it will reexamine the *330 patent*, a stay of the entire suit is warranted because the reexamination of the *580* and 656 patents may significantly affect the litigation of the *330 patent*. First, at the hearing on the instant motion, KLA-Tencor conceded that it accuses the same Nanometrics products of infringement of all three patents-in-suit. Second, Nanometrics argued at the hearing on this matter, and KLA-Tencor did not dispute, that the only real difference in discovery would involve the deposition of the different inventor of the *330 patent*. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be [*12] the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface of the sample" language of claim 28 of the *330 patent* overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the *580 patent*. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005).* If such matters "would continue to be an issue . . . a stay would not preserve many resources." *385 F. Supp. 2d 1030, 2005 U.S. Dist. LEXIS 24203, *6.*

Here, the only claims in the case are for [*13] patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the *580* and 656 is warranted.

2006 U.S. Dist. LEXIS 15754, *

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending reexamination of the *580* and 656 patents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the *580* and 656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the *330 patent* and the reexamination proceedings for the *330 patent* extend beyond those for [*14] the *580* and 656 patents, the Court will entertain a motion extend the stay at that time.

**IT IS SO ORDERED.**

Dated: March 16, 2006

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE